# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LORELEI A. BATES,

    *Plaintiff*,

v.                              CASE NO. 10-CV-12698

COMMISSIONER OF            DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability and supplemental security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 31, 101.) Plaintiff's employment history includes work as a janitor, chore provider and cashier. (Tr. at 128.) Plaintiff last worked in 1999. (*Id.*)

Plaintiff filed the instant claim on October 2, 2006, alleging that she became unable to work on February 2, 2000. (Tr. at 101.) The claim was denied at the initial administrative stages. (Tr. at 48.) In denying Plaintiff's claims, the Defendant Commissioner considered essential hypertension, obesity and other hyperalimentation as possible bases of disability. (*Id.*) On May 27, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Troy M. Patterson, who considered the application for benefits *de novo*. (Tr. at 50-62.) In a decision dated July 28, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 62.) Plaintiff requested a review of this decision on August 14, 2009. (Tr. at 5.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 11, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On, July 8, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

disability.")."However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r,* 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v),(g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 12, 2006, the application date. (Tr. at 55.) At step two, the ALJ found that Plaintiff's hypertension, anemia, osteoarthritis, anxiety, personality disorder, attention deficit hyperactivity disorder

("ADHD"), and post-traumatic stress disorder ("PTSD") were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 56-57.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 60.) At Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 57-60.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 62.)

### E. Administrative Record

#### 1. Mental Impairments

A review of the relevant medical evidence contained in the administrative record indicates that in March 2006 Plaintiff sought counseling with List Psychological Services in Bay City, Michigan, to aid with dysfunctional relationships. (Tr. at 182-93.) Plaintiff was seen by Valerie Daly, LPC (Licensed Professional Counselor), who indicated that Plaintiff should continue treatment until able to self-regulate moods/emotions and cope with stressors. (Tr. at 194-208.) On October 19, 2006, Ms. Daly indicated Plaintiff was feeling overwhelmed by the SSI paperwork. (Tr. at 194.) At that same time, Ms. Daly assessed Plaintiff's functioning as "moderately impaired." (*Id.*) By September 2008, Ms. Daly noted that Plaintiff's progress toward her goals had improved and her prognosis had gone from "fair" to "good." (Tr. at 330, 330-36.)

On August 8, 2006, Plaintiff was given a learning disability evaluation by Thomas Seibert, M.S., LLP (Limited License Psychologist). (Tr. at 210-31.) At that time, Plaintiff described that although she did not submit any job applications in the past year, she could "do both now," i.e., look at advertisements for jobs and place the first phone call to initiate the interview process. (Tr. at 215.) Plaintiff also stated the she "believe[d] that her social anxiety is reduced at present." (*Id.*) It was also noted that Plaintiff has never been hospitalized for treatment of emotional problems but

that she is "depressed at present because of her problems with her children, her lack of financial resources, and her unemployment." (Tr. at 215.)

Plaintiff admitted to using marijuana "three to four times since January 1st of this year [2006]." (Tr. at 216.) When Plaintiff was "asked how she would most like to change herself, Ms. Bates stated, 'Lose weight.'" (Tr. at 217.) "When asked how the Michigan Rehabilitation Services could best be of assistance to her, Ms. Bates answered, 'Help me get a job.'" (*Id.*) "When asked what would be the best job for her, Ms. Bates replied, 'I don't know. Not childcare. I think I could do janitor work. I recently did volunteer work at my church as a janitor.'" (*Id.*) The assessor concluded that Plaintiff would have "difficulty working in any occupation that has an above-average degree of stress" or that would "bring him [sic] into contact with mood-altering substances, and . . . that requires average or better social assertiveness (sales work, management, supervision, law enforcement, etc.)." (Tr. at 229-30.) It was also noted that Plaintiff "has sufficient intellectual and academic abilities to benefit from a return to college-level study." (Tr. at 230.) On the other hand, the assessor stated that Plaintiff's "multiple physical problems will encumber her ability to work as a janitor . . . [and] [t]he present evaluation indicates that Ms. Bates is not emotionally sufficiently well recovered at present to pursue competitive employment." (Tr. at 230.)

Plaintiff was evaluated by Disability Determination Services ("DDS") on November 14, 2006. (Tr. at 255-59.) Plaintiff was diagnosed with bipolar disorder, NOS, personality disorder, NOS and her prognosis was "poor." (Tr. at 259.) A Psychological Medical Advice by examiner Kyle Goulding concluded that Plaintiff "appears capable of simple work." (Tr. at 260.)

A Mental Residual Capacity ("RFC") Assessment performed by Wayne Hill, Ph.D., on December 1, 2006, concluded that Plaintiff was moderately limited in her ability to maintain

attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to complete a normal work-week, and to make simple work-related decisions but that she was otherwise not significantly limited in understanding, memory, or sustained concentration and persistence. (Tr. at 262-63.) Plaintiff was found to be moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism, and to set realistic goals or make plans independently of others, but that she was otherwise not significantly limited in the social interaction and adaption areas. (Tr. at 263.) The assessor noted that Plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature [and that she] retains the mental residual capacity to perform step one and step two tasks on a sustained basis." (Tr. at 264.)

A Psychiatric Review Technique completed by Dr. Hill on December 1, 2006, diagnosed Plaintiff with affective disorders and personality disorders, specifically bipolar disorder NOS and personality disorder NOS. (Tr. at 282-89.) Under the "B" Criteria, Dr. Hill found that Plaintiff is moderately limited in her ability to maintain social functioning and mildly limited in her activities of daily living and in maintaining concentration, persistence and pace. (Tr. at 292.) After listing specific evidence of record, Dr. Hill found Plaintiff's statements "partially credible." (Tr. at 294.)

On May 22, 2009, Ms. Daly completed an impairment questionnaire wherein she stated that, based on her treatment of Plaintiff since March 2006, although Plaintiff has done "very well with outpatient therapy and individual DBT (dialectal Behavior Therapy), [] from a psychiatric standpoint she has done very poorly [because] [s]he has a high sensitivity to medication . . . [and] is not able to participate for psychiatric treatment." (Tr. at 339.) Ms. Daly stated that Plaintiff's prognosis was "[f]air due to chronic dysfunctional relationships[,] [s]truggles with being assertive, both with her children and her significant male friend." (Tr. at 340.) Ms Daly opined that, based

9

on "[t]oo much fluctuation in [Plaintiff's] mood [causing] stress level increases . . . [which] leads to social anxiety and irritability/agitation," Plaintiff would have difficulty working at a regular job on a sustained basis. (Tr. at 340.)

Ms. Daly found Plaintiff to be moderately limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to make work-related decisions. (Tr. at 342.) Ms. Daly also found Plaintiff markedly limited in her ability to perform activities within a schedule, maintain regular attendance, work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace. (Tr. at 342.) Ms. Daly concluded that Plaintiff is moderately limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Tr. at 343.) Ms. Daly also found Plaintiff markedly limited in her ability to interact with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them, and respond appropriately to change in the work setting. (Tr. at 343.)

### 2. Cardiac and Hypertension

An echocardiagram performed on February 18, 2005, due to "palpitations" was "normal." (Tr. at 249.) Plaintiff was given a cardiac evaluation on April 4, 2006, by Gary Tomez, D.O. (Tr. at 180.) Dr. Tomez noted that Plaintiff's hypertension had been "poorly controlled," so he recommended further evaluation and began a "[t]rial of beta-blockers." (Tr. at 180-81.) A chest

x-ray taken on October 25, 2007, was "negative," i.e., the "heart [was] not enlarged[,] [t]he lungs [were] clear [and there were] [n]o pleural effusion or pneumothorax." (Tr. at 386.)

A cardiac stress test performed on October 26, 2007, showed "ischemia of the inferior wall." (Tr. at 385.) Plaintiff underwent a cardiac catheterization on October 29, 2007, by J. G. Joseph, M.D. (Tr. at 383-84.) Dr. Joseph found "[n]ormal size and contractility of the left ventricle[,] [n]o significant fixed or obstructive disease of the coronary arteries[,]and "[m]itral valve prolapse, mild." (Tr. at 384.) Upon discharge on October 30, 2007, it was noted that the "[c]ardiac catheterization by Dr. Joseph was insignificant for stenosis." (Tr. at 397.)

On November 14, 2008, an EKG showed "sinus rhythm with minor ST-T abnormalities in the inferior leads," causing Dr. Joseph to conclude that Plaintiff had "coronary artery disease, mild severity" such that she should "continue her current dose of beta blockers." (Tr. at 346-47.) Dr. Joseph also noted that Plaintiff's "[c]ardiac arrhythmias [] has been maintained on beta blockers." (Tr. at 348.)

Plaintiff was examined by DDS physician Tama Abel, M.D. (Tr. at 267-73.) Dr. Abel noted that Plaintiff's blood pressure was "slightly elevated," but was "certainly not considered out of control." (Tr. at 272.) Dr. Abel's "[p]hysical exam [of Plaintiff] does not suggest the presence of severe peripheral arterial or severe peripheral vascular disease." (*Id.*)

### 3.     Arthritis of the Ankle, Knee, and Spine

Dr. Abel stated Plaintiff had a "recent acute onset of anemia caused by heavy menstrual bleeding," but that the "[p]rognosis is good that she would be more tolerant of exertional activities, such as walking and climbing stairs, as her hemoglobin level returns to a normal range, which is expected." (Tr. at 272-73.) As to osteoarthritis, Dr. Abel stated that "[w]ith the exception of lumbar spine flexion and left hip internal rotation, range of motion of all joints is full [therefore, her]

degenerative joint disease [] appears quite mild." (Tr. at 273.) He also noted that Plaintiff did not lose any digital dexterity after performing full fist with full grip exercises bilaterally. (*Id.*) Finally, Dr. Abel noted that Plaintiff "walks with a normal gait without the use of an assistive device, which she does not need." (*Id.*)

On May 31, 2007, an MRI of Plaintiff's right knee showed "hematopoietic replacement of the fatty marrow, which is not an uncommon finding in a female of this age group [and an] otherwise normal signal intensity throughout the bony structures." (Tr. at 322.) The report also noted "mild edema involving subcutaneous fat overlying the patella tendon [which] could be related to edema or fluid confined to the superficial infrapatellar bursa." (*Id.*) Therefore, the test concluded "[p]ossible superficial infrapatellaer bursitis." (*Id.*) On June 6, 2007, Terrence J. Cherwin, D.O., read the May 31, 2007 report as "show[ing] infrapatellar bursitis." (Tr. at 325.) Dr. Cherwin recommended "conservative treatment," i.e. physical therapy for strengthening and range of motion. (*Id.*)

On May 18, 2009, radiological examinations of Plaintiff's right ankle were "normal" and "unremarkable." (Tr. at 378.) On May 20, 2009, radiological examinations of Plaintiff's lumbosacral spine showed "[a]rthritic changes" at the L4-5 and L5-S1 levels. (Tr. at 379.)

A Physical RFC Assessment was conducted on December 27, 2006. (Tr. at 274-81.) The assessment concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and is unlimited in her ability to push or pull. (Tr. at 275.) There were no postural, manipulative, visual, communicative, or environmental limitations established. (Tr. at 276-78.) The assessor found Plaintiff's statements "partially credible." (Tr. at 279.) After giving a detailed summary of the

medical evidence, the assessor concluded that the "above medical findings support light RFC with no other limitations[,] full range of light." (Tr. at 281.)

### 4. Plaintiff's Daily Activity Report

Plaintiff indicated on her daily activity report that she is able to care for her own personal hygiene, watch television, go to doctor appointments, get groceries, read, make meals for herself and her children, make phone calls, pay bills, read the paper, open mail, make dinner if not tired, talk to her children, fill out paper work, do laundry, shop in stores for up to one hour, handle finances, play board games, read books, and take her medicine. (Tr. at 153-54, 156-57.) She also stated, however, that at times she has to delay personal care because of pain. (Tr. at 154.) Plaintiff indicated she can lift 15 pounds. (Tr. at 158.)

### 5. Administrative Hearing

Plaintiff testified at the administrative hearing that she lives with her two children, who are ages fourteen and sixteen. (Tr. at 35.) She stated that she watches television, grocery shops, reads a lot, and is able to drive. (Tr. at 36.) Plaintiff testified that she was unable to attend her son's football games because of anxiety. (*Id.*) Plaintiff explained that she has PTSD from having been abused when she was young and that it has caused a "social phobia of people." (Tr. at 37.) Plaintiff indicated that she is not taking any medications for her emotional problems because of the side effects they cause. (Tr. at 37.)

The ALJ asked the vocation expert ("VE") to assume a person with Plaintiff's background and residual functional capacity and who could perform light work but was "limited to work that involved only superficial interpersonal contact with coworkers and the public." (Tr. at 45.) The VE indicated that there were a number of jobs in the region of the lower peninsula of Michigan, e.g., 8,200 housekeeper jobs, 2,500 grounds-keeping labor jobs, and 1,400 mail clerk jobs. (Tr. at 45.)

Next, the ALJ asked the VE to consider a person with Plaintiff's background who, "due to a severe psychological impairment, would have marked restrictions in maintaining attention and concentration, and marked restrictions tolerating stress and responding adequately to routine changes in a work setting [a]nd my definition of marked is no useful vocational ability." (Tr. at 46.) The VE responded that such a person could not perform any work that exists in the economy. (*Id.*)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 57-60.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the

14

matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ did not include her severe impairments of hypertension, anemia, anxiety, personality disorder, ADHD, and PTSD in the RFC or hypothetical question posed to the VE. (Doc. 11 at 8-10.) Plaintiff also argues that the ALJ failed to give the appropriate weight to the opinion of Valerie Daly, Plaintiff's treating counselor. (Doc. 11 at 10-12.) As noted above, Ms. Daly is a licensed professional counselor (LPC).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(d), 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). For example, the ALJ will generally "give more weight to the opinion of a source who has examined [the patient] than to the opinion of a source who has not examined [the patient]." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Nevertheless, in considering an examining source opinion, the ALJ will consider other factors including supportability, consistency, and the nature of the relationship between the claimant and the source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

An ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Blakley,* 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, a physician must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Social Security Ruling 06-03p provides that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p (citing 20 C.F.R. §§ 1527(d) and 416.927(d)). To qualify as a treating source, the acceptable medical source must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). In addition, "[a]cceptable medical sources" include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a).

Although Ms. Daly easily satisfies the relationship requirement, since she is a counselor who is neither licensed nor certified, she is not an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a); *Miller v. Comm'r of Soc. Sec.*, No. 1:08-CV-1022, 2010 WL 502761, at *5 (W.D. Mich. Feb. 5, 2010) (citing *Doolin v. Astrue*, No. 3:08-cv-243, 2009 WL 1212232, at *8 (S.D. Ohio May 1, 2009) ("a counselor's opinion is not entitled to controlling weight")). Therefore, the rules requiring deference or a rationale for rejecting her opinion do not apply. *Id.*

16

(citing *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923, at *7 (E.D. Ky. April 17, 2008)).

Even if Ms. Daly were considered an acceptable medical source entitled to some deference, her ultimate opinion that Plaintiff would have difficulty working at a regular job on a sustained basis (Tr. at 340) is not entitled to deference since the Commissioner reserves the power to decide whether a patient is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). In addition, I suggest that the ALJ's decision to reject her opinions would be supported by substantial evidence since her underlying opinions given are inconsistent with Ms. Daly's treatment notes and other record evidence. In the questionnaire of May 22, 2009, Ms. Daly concluded Plaintiff's prognosis was "fair;" yet, in September of 2008, Ms. Daly note that Plaintiff's progress toward her goals had improved her prognosis from "fair" to "good." (Tr. at 330.) In addition, although Ms. Daly found Plaintiff to be at most "moderately impaired" while treating her (Tr. at 194,) in filling out the questionnaire for disability purposes, Ms. Daly found Plaintiff markedly impaired in several areas of functioning. (Tr. at 342-43.) In addition, Ms. Daly's findings are in conflict with Plaintiff's own statements and the findings of other examining and non-examining sources. Plaintiff indicated that she could look at advertisements for jobs and place the first phone call to initiate the interview process. (Tr. at 215.) Plaintiff also stated the she "believe[d] that her social anxiety is reduced at present." (*Id.*) Plaintiff's statements also show that she believes her depression is largely based on external factors when she stated that she is "depressed at present because of her problems with her children, her lack of financial resources, and her unemployment." (Tr. at 215.) Plaintiff even stated that she wanted help getting a job, that she could do janitor work since she recently volunteered as a janitor at her church. (Tr. at 217.) Other evaluators concluded that Plaintiff retained the functional capacity to do simple work. (Tr. at 260, 264.) I therefore suggest that

substantial evidence would support the ALJ's decision to decline deference to Ms. Daly's opinions and the ALJ's findings regarding Plaintiff's mental residual functional capacity.

Although Plaintiff argues that the hypothetical failed to account for her physical impairments of anemia and hypertension, I suggest that the hypothetical's physical RFC of light work is supported by substantial evidence. The record evidence does not establish that Plaintiff's impairments result in a functional incapacity to do light work. Many of Plaintiff's cardiac tests were "normal," "insignificant," or showed only mild problems. (Tr. at 249, 384, 386, 397.) The cardiac issues, such as arrhythmia, were "maintained on beta blockers." (Tr. at 348.) Plaintiff's blood pressure was "slightly elevated," "but is certainly not considered out of control." (Tr. at 272.) Dr. Abel's "[p]hysical exam [of Plaintiff] does not suggest the presence of severe peripheral arterial or severe peripheral vascular disease." (*Id.*) As to anemia, Dr. Abel stated Plaintiff had a "recent acute onset of anemia caused by heavy menstrual bleeding" but that the "[p]rognosis is good that she would be more tolerant of exertional activities, such as walking and climbing stairs, as her hemoglobin level returns to a normal range, which is expected." (Tr. at 272-73.) Therefore, I suggest the evidence supports a finding that anemia did not affect Plaintiff's physical RFC. In addition, Plaintiff's "degenerative joint disease" was "quite mild" and did not cause any loss of dexterity. (Tr. at 273.) Dr. Abel noted that Plaintiff "walks with a normal gait without the use of an assistive device" and radiological examinations of her right ankle were "normal" and "unremarkable." (Tr. at 273, 378.) Therefore, I suggest that the ALJ's physical RFC findings are consistent with the medical evidence and Plaintiff's own statement that she can lift 15 pounds. (Tr. at 158, 274-81.)

I further suggest that the hypothetical accounted for Plaintiff's limitations as to social functioning by requiring only "work that involved only superficial interpersonal contact with

18

coworkers and the public." (Tr. at 45.) In addition, the jobs described, such as housekeeper, groundskeeper, and mail clerk, were consistent with the RFC assessment which found that Plaintiff "appears capable of simple work" and that she "retains the mental residual functional capacity to perform step one and step two tasks on a sustained basis." (Tr. at 260, 264.)

I therefore suggest that the hypothetical questions accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and Plaintiff's own testimony that she watches television, grocery shops, reads a lot, and is able to drive (Tr. at 36), as well as her reported daily activities which add the abilities to care for her own personal hygiene, go to doctor appointments, get groceries, make meals for herself and her children, make phone calls, pay bills, read the paper, open mail, talk to her children, fill out paper work, do laundry, shop in stores for up to one hour, handle finances, play board games, and take her medicine. (Tr. at 153-54, 156-57.)

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

19

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ **Charles E Binder**
                                              CHARLES E. BINDER
Dated: March 1, 2011                            United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  March 1, 2011                        By     s/Patricia T. Morris
                                                Law Clerk to Magistrate Judge Binder